JOHN B. SULLIVAN (State Bar No. 96742)
JAN T. CHILTON (State Bar No. 47582)
Email:  jtc@severson.com
REGINA J. McCLENDON (State Bar No. 184669)
Email:  rjm@severson.com
ERIK KEMP (State Bar No. 246196)
Email:  ek@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA  94111
Telephone:  (415) 398-3344
Facsimile:  (415) 956-0439

Attorneys for Defendant
Saxon Mortgage Services, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CESAR DIWA, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SAXON MORTGAGE SERVICES, INC, a Texas corporation; and DOES 1 through 10 inclusive,<br><br>Defendants. | Case No.:  CV10-5254 GAF (RZx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Hearing Date:  September 27, 2010<br>Time:  9:30 a.m.<br>Courtroom:  740<br>Judge:  Hon. Gary Feess<br><br>Accompanying Documents:  Notice of Motion; Request for Judicial Notice |

# TABLE OF CONTENTS

*Page*

I.    Introduction ................................................................. 5

II.   Alleged Facts ................................................................ 7

III.  **Plaintiff Misinterprets Civil Code Section 2924.4(b)** ................................... 9

    A.   Principles Of Statutory Interpretation................................. 9

    B.   Section 2954.4(b) Refers To Past Due Payments,
        Not Those Not Yet Due ................................................10

    C.   Plaintiff's Construction Based On
        Supposed Purpose Is Wrong ..........................................12

    D.   Section 2954.4(b)'s First Sentence
        Does Not Create An Ambiguity ........................................15

    E.   Legislative History Confirms The Statute's Plain Meaning...............17

IV.   None Of Plaintiff's Four Claims Are Viable .................................20

    A.   Plaintiff Has No Viable Breach Of Contract Claim..........................20

    B.   Plaintiff Has Not Alleged A UCL Violation ..................................22

    C.   Plaintiff Alleges No Unjust Enrichment........................................23

    D.   The Court Should Decline To Grant Declaratory Relief...................24

V.    Conclusion ................................................................25

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Alperin v. Vatican Bank*, 410 F.3d 532 (9th Cir. 2005) ........................................3

*Arnett v. Dal Cielo*, 14 Cal. 4th 4 (1996).........................................................5

*Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009) .......................................................13, 16

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir.1994)...................................................3

*Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942)...............................................17

*Cal. Medical Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,
    94 Cal. App. 4th 151 (2001)...............................................................17

*Commercial Union Ins. Co. v. Walbrook Ins. Co.*,
    41 F.3d 764 (1st Cir. 1994) .................................................................17

*Cortez v. Purolator Air Filtration Products Co.*,
    23 Cal. 4th 163 (2000) ....................................................................2, 9

*Daro v. Superior Court,* 151 Cal. App. 4th 1079 (2007) ........................................15

*Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 481 (2009) ..........................9, 16

*Dedication & Everlasting Love to Animals v. Humane Soc.*,
    50 F.3d 710 (9th Cir. 1995).................................................................2

*Fiedler v. Clark*, 714 F.2d 77 (9th Cir. 1983) ...................................................17

*Gerlinger v. Amazon.Com, Inc.*,
    311 F. Supp. 2d 838 (N.D. Cal. 2004)....................................................17

*In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir.1999).........................3

*In re Verifone Secs. Litig.*, 11 F.3d 865 (9th Cir. 1993)..........................................3

*Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728 (2003) ..................................5

*Klein v. United States,* ___ Cal. 4th ___, 2010 WL 2890427 (2010) ..........................5

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) ................................................3

*Kunert v. Mission Fin. Servs. Corp.*, 110 Cal. App. 4th 242 (2003) ........................16

*McCann v. Lucky Money, Inc.,* 129 Cal. App. 4th 1382 (2005).........................15, 16

*McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457 (2006) ..........................13

*Mejia v. Reed*, 31 Cal. 4th 657 (2003)...........................................................6

*Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993) ................................................9

*NAACP v. Am. Family Mut. Ins. Co.,* 978 F.2d 287 (7th Cir. 1992) ........................9

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*National Union Fire Ins. Co. v. Karp*, 108 F.3d 17 (2d Cir. 1997) ........................17

*Paracor Fin. v. Gen. Elec. Capital Corp.*,
    96 F.3d 1151 (9th Cir. 1996).........................................................................17

*Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir.1998) ..........................................................3

*Principal Life Ins. Co. v. Robinson*, 394 F.3d 665 (9th Cir. 2004)........................18

*Rodriguez v. United States,* 480 U.S. 522 (1987) ..........................................................9

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950)............................17

*Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC,*
    634 F. Supp. 2d 1009 (N.D. Cal. 2007).........................................................15

*Walker v. Countrywide Home Loans, Inc.,*
    98 Cal. App. 4th 1158 (2002)..............................................................15, 16

*Wells v. One2One Learning Foundation*, 39 Cal. 4th 1164 (2006).......................6, 8

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ...........................................17, 18

*Statutes*

California Business and Professions Code
    Section 17200 ................................................................................................2
    Section 17204 ..............................................................................................15

Civil Code
    Section 2954.4 ........................................................................................*passim*

Georgia Code Annotated
    Section 7-6A-3 .............................................................................................10

Idaho Code Annotated
    Section 28-42-301 .......................................................................................10

Indiana Code Annotated
    Section 24-4.5-3-203.5 ...............................................................................10

Kansas Statutes Annotated
    Section 16a-2-502 ..................................................................................10, 11

Louisiana Revised Statutes Annotated
    Section 3527 ................................................................................................10

Massachusetts General Laws Annotated
    Chapter 183, section 59...............................................................................10

New Jersey Statutes Annotated
    Section 46:10B-25 .......................................................................................10

# TABLE OF AUTHORITIES

*Page(s)*

*Statutes*

Wisconsin Statutes Annotated
    Section 138.052 ...................................................................................10

West Virginia Code
    Section 46A-3-113 ...............................................................................10

Wyoming Statutes Annotated
    Section 40-14-312................................................................................10

*Other Authorities*

American Heritage Dictionary of the English Language (2010)
    due........................................................................................................7
    recent ...................................................................................................7

Black's Law Dictionary (8th ed. 2004)
    due........................................................................................................7

MacMillian Dictionary (2010)
    due........................................................................................................2
    recent ...................................................................................................7

Merriam-Webster Online Dictionary (2010)
    due........................................................................................................7
    recent ...................................................................................................7

Uniform Consumer Credit Code (1974)
    Section 2.502 .......................................................................................10
    Section 2.503 .......................................................................................10

Uniform Consumer Credit Code (1968)
    Section 3.203 .......................................................................................10

# I

# INTRODUCTION

Defendant Saxon Mortgage Services, Inc. ("Saxon") moves to dismiss this putative class action on the ground that it fails to state a claim on which relief may be granted.

The nub of plaintiff's complaint is that Saxon purportedly misapplies payments on home mortgage loans for late fee purposes under certain narrowly circumscribed conditions, thereby allegedly violating California Civil Code § 2954.4(b).  That section states:

> A late charge may not be imposed on any installment which is paid or tendered in full on or before its due date, or within 10 days thereafter, even though an earlier installment or installments, or any late charge thereon, may not have been paid in full when due.  For the purposes of determining whether late charges may be imposed, any payment tendered by the borrower shall be applied by the lender to the most recent installment due.

The entire case turns on a question of statutory interpretation.  Does § 2954.4(b) require the lender to attribute a payment received after the end of month #1's grace period but before month #2's due date to the installment due in month #2 for late fee purposes?  Rephrased in terms of the concrete example alleged in the complaint (¶26), the issue is whether § 2954.4(b) requires the lender to attribute a payment received between January 11 and January 31 to the installment due February 1 for late fee purposes?

The answer is no, as § 2954.4(b)'s words clearly state.  The statute requires a lender to attribute a payment to "the most recent installment due."

Until its due date, an installment is not "due."  Hence, § 2954.4(b)'s words "most recent installment due" can refer only to an installment whose due date has already occurred.  Of multiple installments whose due dates have already occurred but remain unpaid, the statute requires the lender to attribute a payment to the installment whose due date occurred most recently.

The words "most recent" confirm that the statute selects only among past due installments, not installments that will become due in the future. "Recent" refers to the past, not the future.

Plaintiff's contrary claim ignores statutory language and focuses instead on supposed statutory purpose of avoiding late fees to the maximum extent possible. Plaintiff says the Legislature intended to require lenders to attribute any payment received after month #1's grace period to month #2 because doing so may avoid assessment of a late fee in month #2; whereas, attributing the payment to month #1 will not avoid assessment of any late fee.

Plaintiff's contention is doubly wrong. First, plaintiff errs in pursuing pre-sumed legislative intent despite contrary statutory language. As both the Ninth Circuit and the California Supreme Court have held, that is an inappropriate method of statutory interpretation.[1] Second, plaintiff errs in presuming a legislative intent to minimize late fees under all circumstances rather than in the particular situation to which § 2954.4(b)'s language is clearly directed. Had the Legislature really intended the result plaintiff advocates, it could easily have chosen statutory language that clearly dictated that result. For example, instead of "most recent installment due," the section could refer to "the next installment as to which no late fee has been assessed."

Because § 2954.4(b) does not require a lender to attribute payments in the manner plaintiff contends, his complaint states no legally viable claim. Saxon does not breach the deed of trust in attributing payments to the most recent installment due—i.e., to the installment whose due date fell in the most recent past, not future. Saxon's practice, which complies with § 2954.4.(b)'s mandate, is neither unfair nor fraudulent, and thus does not offend California Business and Professions Code

---

[1]     *See Cortez v. Purolator Air Filtration Products Co.,* 23 Cal. 4th 163, 176 n. 9 (2000) (*quoting Dedication & Everlasting Love to Animals v. Humane Soc.,* 50 F.3d 710, 713 (9th Cir. 1995)).

- 6 -

§ 17200 (the "UCL").  Saxon is not unjustly enriched by the late fees charged in these circumstances because plaintiff agreed to pay those fees.

Finally, the Court should deny declaratory relief.  A declaration that plaintiff is not entitled to relief will serve little purpose beyond that achieved by a dismissal with prejudice.

For all of these reasons, the Court should grant this motion and dismiss the case.  Leave to amend should be denied.  No change in factual allegations can cure the fatal flaw in the legal theory on which the complaint is based.

## II

## ALLEGED FACTS

On a motion to dismiss, the Court accepts as true the facts properly pleaded in the complaint, but not conclusions of law.[2]  Contents of documents on which plaintiff's claim depends, that are mentioned in the complaint or on which the plaintiff's claim depends and whose authenticity no party questions, may also be considered even if the documents are not attached to the complaint.[3]

The alleged and judicially noticeable facts are stated below in accordance with those rules.  Saxon does not concede, for any other purpose, the truth of any of the facts plaintiff alleges.

Plaintiff Cesar Diwa is a California resident.  Compl., ¶ 8.  In February 2007, plaintiff obtained a loan from New Century Mortgage Corporation.  *Id.* at ¶ 18.  The loan is evidenced by a promissory note and secured by a deed of trust encumbering

---

[2]    *Alperin v. Vatican Bank*, 410 F.3d 532, 541 (9th Cir. 2005); *In re Verifone Secs. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993).

[3]    *Knievel v.* ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (considering surrounding webpages to determine whether accused webpage was defamatory in context); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir.1998) (district court properly considered documents attached to a motion to dismiss that described the terms of plaintiff's group health insurance plan, where plaintiff alleged membership in the plan, his claims depended on the conditions described in the documents, and plaintiff never disputed their authenticity); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir.1999); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994).

plaintiff's residence at 3825 Paddock Way, Lancaster, California.  *Id.* at ¶ 18 & Exs. A, B.  The promissory note provides for a late fee equal to 5% of the principal and interest portion of an installment that remains unpaid more than 15 days after its due date.  It also provides that only one late fee will be assessed for a single late installment.  Compl., ¶ 19, quoting Compl., Ex. A  7(A).

Saxon took over the servicing of plaintiff's loan at some point after its origination.  *Id.* at ¶¶ 22, 23.

Since the servicing transferred to Saxon, plaintiff has made several payments after the grace period, but before the due date of the next installment.  *Id.* at ¶ 27.  Saxon attributed those payments to the installment that fell due most recently in the past (on which a late fee had already been assessed), rather than the installment next due in the future.  Plaintiff made no additional payment before the end of the next grace period and so was assessed another late fee for that installment as well.  *Id.*

On behalf of a putative class of other California borrowers whose loans were or are serviced by Saxon and were charged late fees under similar circumstances, *id.* at ¶¶ 7, 32-44, plaintiff attempts to allege four claims, each based on the assessment of late fees under the circumstances just mentioned.

First, plaintiff asserts that Saxon breached the contract evidenced by his promissory note and deed of trust.  *Id.* at ¶¶45-50.  Plaintiff alleges that because the contract was made in California and references California property, it incorporates § 2954.4(b), which Saxon's practice purportedly violates, thereby breaching the contract as well.  *Id.* at ¶49.

Second, plaintiff alleges that Saxon's practice is unfair and deceptive, thereby violating the UCL.  *Id.*, at ¶¶ 51-56.  The practice is unfair, plaintiff says, because Saxon "charged excessive late fees to borrowers."  *Id.* at ¶ 54.  The practices are fraudulent, plaintiff avers, because some borrowers were led to believe the late fees were "calculated and assessed properly."  *Id.* at ¶ 55.

Third, plaintiff alleges that Saxon is unjustly enriched by the late fees it has collected in these circumstances.  *Id*. at ¶¶ 57-67.  Plaintiff avers that Saxon "unlawfully and unfairly assessed excessive late fees on borrowers" and "concealed the true facts and circumstances from Plaintiffs," thus making Saxon's retention of the late fees unjust  *Id*. at ¶¶ 58, 59, 62.

Finally, plaintiff alleges a purported claim for declaratory relief, seeking a judgment affirming that Saxon's above-described late fee practices are unfair or fraudulent and in breach of contract.  *Id*. at ¶¶ 66-68.

## III

## PLAINTIFF MISINTERPRETS CIVIL CODE SECTION 2924.4(b)

### A.    Principles Of Statutory Interpretation

The rules governing construction of California statutes are well-established. The California Supreme Court recently reiterated them in *Klein v. United States,* ___ Cal. 4th ___, 2010 WL 2890427, at *5 (2010).  The overall objective of statutory interpretation is to divine the Legislature's intent and to effectuate it insofar as possible.  "In construing statutes, we aim 'to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.' "  *Klein*, 2010 WL 2890427, at *5 (citations omitted).

In ascertaining legislative intent, a court "look[s] first to the words of the statute, 'because the statutory language is generally the most reliable indicator of legislative intent.' "  *Id.* (citations omitted).  The statutory language is given the usual, everyday meaning its words have in lay speech, except when the statute uses terms of art having established legal meanings or the statute specially defines its words.  *Arnett v. Dal Cielo*, 14 Cal. 4th 4, 19 (1996).

When the statutory language is clear, the judicial inquiry ceases.  There is no need, in that circumstance, to consult legislative history or other secondary sources of legislative intent.  A court's only duty is to apply or enforce the statute's clear

terms. "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to [extrinsic] indicia of the intent of the Legislature." *Jarrow Formulas, Inc. v. LaMarche,* 31 Cal. 4th 728, 735 (2003) (citations and internal quotation marks omitted).

> If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction.

*Wells v. One2One Learning Foundation*, 39 Cal. 4th 1164, 1190 (2006).

Only "[w]hen the statutory text is ambiguous, or it otherwise fails to resolve the question of its intended meaning, courts look to the statute's legislative history and the historical circumstances behind its enactment." *Klein*, 2010 WL 2890427, at *5 (*citing Mejia v. Reed*, 31 Cal. 4th 657, 663 (2003)).

As a final step, "the court may consider the likely effects of a proposed interpretation because ' "[w]here uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation." ' " *Klein*, 2010 WL 2890427, at *5 (citations omitted).

**B.     Section 2954.4(b) Refers To Past Due Payments, Not Those Not Yet Due**

Plaintiff's legal theory turns on the interpretation of California Civil Code § 2954.4(b), a relatively short provision, whose two sentences state:

> A late charge may not be imposed on any installment which is paid or tendered in full on or before its due date, or within 10 days thereafter, even though an earlier installment or installments, or any late charge thereon, may not have been paid in full when due. For the purposes of determining whether late charges may be imposed, ***any payment*** tendered by the borrower ***shall be applied*** by the lender ***to the most recent installment due***.

(Emphasis added.)

No published decision has yet interpreted the emphasized words of the statute, which are key in this case. *See* Compl., ¶¶ 2, 3, 26, 27. Nevertheless, the

12015/0003/833915.1

Case No.:

1  statute's meaning is clear when the emphasized words are given their usual,

2  everyday meaning as used in lay speech:  "Most recent installment due" means the

3  installment that fell due on the date in the past which is nearest in time to the

4  present.

5       The phrase "most recent installment due" refers only to past-due

6  installments, **not** installments that will first fall due at a date still in the future.  The

7  common, ordinary meaning of the word "due" precludes any reference to future

8  events.  "Due" means "[i]mmediately enforceable" or "[o]wing or payable;

9  constituting a debt."  Black's Law Dict. (8th ed. 2004), due, defs. 2, 3.  Webster's

10  Dictionary defines "due" to mean "owed or owing as a debt" and "having reached

11  the date at which payment is required : payable <the rent is due>."  Merriam-

12  Webster Online Dict. (2010), due, adj., defs. 1, 5.  "[I]f money is due, it is time for

13  it to be paid."  MacMillian Dict. (2010), due, adj., def. 2.[4]

14       An installment that first becomes payable at some future date is not yet

15  "due."  It is not yet time for that installment to be paid.  It has not yet reached the

16  date at which payment is required.  The future installment is not yet owing or

17  immediately enforceable.  It is not "due."

18       That § 2954.4(b) refers only to installments that have already fallen due in

19  the past is also confirmed by the words "most recent," which precede "installment

20  due."  "Recent" refers to something in the past, not the future.  In everyday speech,

21  "recent" means "having lately come into existence" or "of or relating to a time not

22  long past," Merriam-Webster Online Dict. (2010), recent, defs. 1(a), (b);

23  "happening or starting a short time ago," MacMillian Dict. (2010), recent; *accord*:

24  Cambridge Dict. of Am. English, recent; or "[o]f, belonging to, or occurring at a

25  time immediately before the present,"  Am. Heritage Dict. of the English Language

26

---

27  [4]    *See also* Am. Heritage Dict. of the English Language (2010), due, defs. 1, 2:
28  "due" means "[p]ayable immediately or on demand" or "[o]wed as a debt; owing:
   the amount still due."

12015/0003/833915.1

1  (2010), recent.  "Not long past," "a short time ago," "immediately before the

2  present" cannot refer to something that will occur only in the future.[5]

3      "Due" and "recent" are two clear indications that the Legislature intended a

4  lender to apply loan payments only to installments that fell due in the past, not

5  those that might come due in the future.  If more than one installment remains

6  owing and unpaid, then the payment must be applied to the installment that fell due

7  "most recent[ly]"—i.e., nearest in time to the present.  Since the meaning of

8  § 2954.4(b)'s words is clear, their plain meaning governs.  *Wells*, 39 Cal. 4th at

9  1190.  There is no need to consider legislative history or other secondary sources of

10  legislative intent.  Instead, the Court must presume the Legislature meant what it

11  said.  *Id.*

12  **C.    Plaintiff's Construction Based On Supposed Purpose Is Wrong**

13      The complaint suggests that plaintiff seeks to overcome the plain meaning of

14  § 2954.4(b) by urging that the statute's purpose is better fulfilled by the

15  interpretation he espouses.   The complaint alleges that § 2954.4(b)'s purpose "is to

16  ensure that, if one payment is missed, but subsequent payments are made on time,

17  the borrower is charged a late charge for the single missed payment."  Compl., ¶ 2.

18  Additionally, plaintiff asserts that if a payment is received after month #1's grace

19  period, so that a late fee has already been imposed for that month's installment, that

20  installment is "past due," and the payment must be attributed to month #2 to avoid

21  imposition of a second late fee.  *Id.* at ¶¶ 26, 27.

22      There are two fatal flaws in this argument.  The first is arguing from

23  supposed statutory purpose without regard for statutory language.  The second lies

24  in the postulated statutory purpose.

25

26

27  [5]      Thus, one refers to the recent past, but never the recent future.  The near

28  future, the not-too-distant future, and soon all capture the concept of a time that will
occur shortly after the present.  Recent future does not.

Both the Ninth Circuit and the California Supreme Court have condemned plaintiff's style of statutory interpretation.  Purpose cannot override clear statutory language; rather, language restricts purpose, often reflecting legislative compromise that allowed enactment of a statute that even partially fulfills the sponsors' purpose.

> Identification of the laudable purpose of a statute alone is insufficient to construe the language of the statute.  "To reason from the evils against which the statute is aimed in order to determine the scope of the statute while ignoring the language itself of the statute is to elevate substance over necessary form.  The language in which the statute is cast confines and channels its purpose.  Without due attention to the statutory terms, the statute becomes an open charter, a hunting license to be used where any prosecutor, plaintiff and judge sees an evil encompassed by the statutes' purpose. To the contrary, statutory interpretation must start with the words that define and cabin its laudable purposes." ( *Delta v. Humane Soc. of U.S., Inc*. (9th Cir. 1995) 50 F.3d 710, 713.)

*Cortez,* 23 Cal. 4th at 176 n. 9.[6]

Plaintiff also errs in asserting that § 2954.4(b)'s purpose is to minimize late fees in all circumstances.  That is not true here as it was not true under Civil Code § 2982(k), the Automobile Sales Finance Act's late fee provision.  *See Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 481, 592-93 (2009) (affirming trial court's sustaining of demurrer in case alleging auto finance company's payment application procedure had resulted in multiple late fee assessments).

Instead, as the statutory wording of § 2954.4(b)'s second sentence shows, the section is more narrowly focused on avoiding repeated late charges in the more common circumstance illustrated by *Davis*—that is, where the borrower simply

---

[6]    *See also Rodriguez v. United States,* 480 U.S. 522, 525-26 (1987) ("no legislation pursues its purposes at all costs.  Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that whatever furthers the statute's primary objective must be the law."); *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 261-62 (1993) ("vague notions of a statute's 'basic purpose' are nonetheless inadequate to overcome the words of its text regarding the specific issue under consideration").

- 13 -

1  skips one payment and then makes the rest on time, on the due date or during the

2  following grace period.

3      Indeed, it is doubtful the different circumstances of this case were even con-

4  templated by the Legislature.  There is little reason for a borrower to make repeated

5  payments after the end of the grace period but before the next installment due date.

6      Had the Legislature intended to cover this unusual circumstance, it could and

7  would have chosen statutory language appropriate to that purpose.  For example,

8  § 2954.4(b)'s second sentence might have been rephrased to require application of

9  any payment received to "the unpaid installment which is due most nearly in time

10 and with respect to which no late fee has been assessed."[7]

11      That the Legislature might rationally choose to address the skipped payment

12 problem but not the situation of consecutive late payments is shown by Kansas'

13 version of Uniform Consumer Credit Code § 2.502.  It provides that "[a]

14 delinquency charge may be collected only once on an installment however long it

15 remains in default."  Kan. Stat. Ann., § 16a-2-502(3).  However, the same section

16 ───────────────

[7]      In fact, a wide range of statutory wording has been adopted in similar legisla-
17 tion.  Section 3.203(3) of the 1968 version of the Uniform Consumer Credit Code
provides:  "For purposes of this subsection payments are applied first to current
18 installments and then to delinquent instalments."  Adopted as Ind. Code Ann., §24-
4.5-3-203.5(3); La. Rev. Stat. Ann., § 3527(C)(2); Wis. Stat. Ann., § 138.052(e)(6);
19 W. Va. Code, § 46A-3-113(3); Wyo. Stat. Ann., § 40-14-312(c); *see also* Idaho
Code Ann., § 28-42-301(3) (adding "or scheduled payments" after both "current
20 installments" and "delinquent installments");.

21 The 1974 version of the same code replaces "current" with a more complex
formula.  Section 2.502(3) states that "[f]or purposes of this subsection a payment
22 is deemed to have been applied first to any instalment due in the computational
period (paragraph (a) of subsection (1) of Section 2.503) in which it is received and
23 then to delinquent instalments and charges."  Section 2.503(1)(a) defines
"computational period" to mean "the interval between scheduled due dates of the
24 instalments under the transaction if the intervals are substantially equal."

25 Before an amendment in 2003, Georgia Code Annotated, § 7-6A-3(3) provided that
no late payment charge may be charged with respect to any subsequent payment [on
26 a home loan] that would have been a full payment but for the previous default or
the imposition of the previous late payment charge …."  *See also* Mass. Gen. Law
27 Ann., ch. 183, § 59 ("If a late payment fee has been once imposed with respect to a
particular late payment, a fee shall not be imposed with respect to any future
28 payment which would have been timely and sufficient, but for the previous
default."); N.J. Stat. Ann., § 46:10B-25(d)(3) (same).

- 14 -

also provides: "[f]or delinquency charge purposes, a payment made prior to the due date of the next installment payment shall be applied to the previous installment." Kan. Stat. Ann., § 16a-2-502(5).[8]

In short, plaintiff's argument from supposed statutory purpose provides no sound basis for ignoring the plain meaning of § 2954.4(b)'s words. Plaintiff cannot show that the Legislature intended to minimize late fees under all circumstances, and even if he could, that purpose would be "confined and channeled" by the language in which the statute is cast. *See* cases cited at n. 1 above.

**D.      Section 2954.4(b)'s First Sentence Does Not Create An Ambiguity**

The other springboard for plaintiff's legal theory appears to be a single word—"before"—in § 2954.4(b)'s first sentence. Compl., ¶ 26. That sentence states:

> A late charge may not be imposed on any installment which is paid or tendered in full on or ***before*** its due date, or within 10 days thereafter, even though an earlier installment or installments, or any late charge thereon, may not have been paid in full when due.

(Emphasis added.) Citing these words, plaintiff alleges: "[i]f the January payment is **past due**, the February payment becomes the most recent installment due for purposes of Section 2954.4(b), and any payment made between January 11 and

---

[8]      "The principal consumer abuse at which the section is aimed is that of precluding multiple delinquency charges stemming from a single delayed payment. Under law before this Act if the consumer's payments were due on the first of the month and the January payment of $100 was not made until the 15th, the creditor could assess a late payment of $5 (assuming that to be the correct figure under state law) and allocate the $100 payment received on February 1st, $95 to the February payment and $5 to the unpaid delinquency charge, thus causing the consumer to be delinquent in February as well. If the consumer made his $100 payment on time for each of the remaining months of the contract, he would incur a delinquency charge for each month remaining on the contract because of the rule allowing the creditor to allocate current payments to unpaid charges incurred in past periods. Subsection (3) meets this problem by compelling the creditor to apply the full $100 payment received on February 1 to the payment due that month. Hence, the creditor could collect the delinquency charge only for January if all other payments were made on time." Kan. Stat. Ann., § 16a-2-502, UCCC cmt. 2.

- 15 -

January 31 is a payment made "on or **before**: the February 1 due date." Compl., ¶ 26.

This assertion is both circular and wrong. The introductory clause assumes the conclusion that plaintiffs desire; namely, that a payment received after the end of January's grace period but before the due date for the February installment is payment of the February installment. However, nothing in § 2954.4(b) supports that assertion.

As already shown, *see* pp. 7-8, § 2954.4(b)'s second sentence states that a payment received in January must be applied to "the most recent installment due"—a phrase referring solely to an installment which fell due in the past, not to the February installment which has not yet become payable. Section 2954.4(b)'s second sentence makes no exception for a payment received after expiration of a grace period or for an installment that is, in plaintiffs' words, "past due."[9]

In accordance with § 2954.4(b)'s second sentence, therefore, if January's installment has not been paid earlier, a payment received between January 11 and January 31 is a payment of the January installment, not a payment of the February installment before its due date. So, contrary to plaintiffs' assertion, § 2954.4(b)'s first sentence does not apply to that payment or give rise to any ambiguity in the statute's meaning or application.

Interpreted this way, all of § 2954.4(b)'s words make sense and are given force and effect. When one or more installments are due but unpaid, the subdivision's second sentence dictates to which of them the lender must apply the payment. But in the more usual case, when the borrower has already paid all past due installments, the subdivision's first sentence prevents the lender from assessing a late fee when it receives a payment at any time before expiration of that

---

[9]   The words "past due" are no where to be found in § 2954.4, least of all in § 2954.4(b)'s second sentence.

- 16 -

installment's grace period—i.e., "on or before its due date, or within 10 days thereafter."[10]

As mentioned earlier, the Legislature could easily have framed statutory language to direct application of payments only to installments on which no late fee had yet been assessed. But, it did not do so. The single word "before" in section 2954.4.(b)'s first sentence, addressing a different topic, cannot change and even render ambiguous the payment allocation rule clearly set forth in the subdivision's second sentence.

## E.    Legislative History Confirms The Statute's Plain Meaning

Legislative history of the bill that added § 2954.4 to the Civil Code confirms that the statute means what it says, not what plaintiff tries to read into it. Assem. Bill No. 398 (1975-76 Reg. Sess.) ("AB 398").

Introduced on January 7, 1975, AB 398 was extensively amended on May 23, 1975 in the Assembly Committee on Finance, Insurance and Commerce. Request for Judicial Notice ("RJN"), Ex. A. The words that now appear in § 2954.4(b) were added at that time. *Id.*, p. 3.

The Assembly Committee issued a report on AB 398 as amended on May 23, which explains the new subdivision (b)'s purpose as follows:

> Subsection (b) of Section 2954.4 deals with the practice of pyramiding. Pyramiding is where a borrower is late in making one or more installment payments with the lender levying a late charge on all the late payments even though some of the late payments are partial or for the full installment for that particular month. This subsection would prevent the following examples from occurring:
>
> 1.    The borrower's monthly payment is $100; the borrower fails to tender his January payment; the borrower tenders his February payment in full and on time; the lender applies the $100 *paid in February* to both the January and February payment in the amount of $50 per

---

[10]    This point might seem obvious, but it would have been thrown in doubt had the sentence mentioned only payments made on the due date or within the grace period.

- 17 -

1

month thereby charging the borrower for late payments in January and in February; and

2

2.      The borrower tenders partial payment in January of $50; *in February* the borrower tenders his full payment and on time; and the lender apportions ***the $100 February payment*** with $50 going to the January payment and $50 towards the February payment thereby charging the borrower a late charge on both January and February payments.

3

4

5

6

7

RJN, Ex. C, p. 3 (emphasis added).

8

As the quotation's emphasized words make clear, subdivision (b) was

9

intended to prevent application of payments received in a later month (February) to

10

amounts still unpaid on a prior month's (January's) overdue installment.  The

11

committee's explanation of subdivision (b) shows it was *not* intended to require a

12

lender to apply a payment received in a prior month (January), but after its grace

13

period, to a later month's (February's) installment.

14

Moreover, apart from its prohibition of late fee "pyramiding," AB 398 was a

15

lender's bill, not a consumer protection measure.[11]  Passed in the wake of the then-

16

recent decision in *Garrett v. Coast & So. Fed. Sav. & Loan Ass'n*, 9 Cal. 3d 731

17

(1973), AB 398 overruled that decision's tight restriction of late fees and instead

18

allowed lenders to assess late fees of up to 6% of a late installment.  *See* RJN, Ex.

19

B, p. 2.

20

At hearings before the Assembly Committee in November 1974, witnesses

21

told the committee that late payment fees were necessary and performed an

22

important function.  Beyond recompensing lenders for delay and administrative

23

24

---

25

[11]      *See* RJN, Ex. C, p. 4 (showing the bill was supported by the California Banker's Association and California Savings and Loan League); *see also* RJN, Ex. G, pp. 39-40 ("With the *Garrett* case now firmly part of California Law, consumer groups are not interested in legislation … which would establish statutory maximum late payment charges ….  Lenders, on the other hand, claim that a statutory formula is essential because of the difficulty of computing actual damages with any specificity.")

26

27

28

- 18 -

Case No.:

1    expense, late fees encouraged borrowers to pay on time.[12]  On time payment, in

2    turn, was necessary to allow the local lender (most often a local savings and loan or

3    bank) to sell the loan into the secondary market,[13] thereby obtaining more capital to

4    reinvest in additional California home loans.

> The problem we have is that there is no effective way that
> we can collect from a delinquent borrower on his delin-
> quencies without going to a foreclosure proceeding which
> is ridiculous…. I think Mr. McKenna this morning
> indicated another reason why late fees are important to
> the lender and that is the problem of the mortgage being
> poisoned, if you will, when a person defaults on a
> payment when the lender tries to sell that mortgage in the
> secondary market [to get] additional funds to lend here in
> California.

RJN, Ex. E, p. 96 (remarks of R. Ratcliff, Cal. Bankers Assn. witness).[14]

In short, legislative history confirms the tale told by § 2954.4(b)'s words.

The subdivision was intended to prevent late fee "pyramiding" when a borrower

skips or only partially pays a prior month's installment but then fully pays the next

---

[12]    Witnesses also pointed out that apart from assessing late fees, lenders had no practical means of encouraging timely payment.  Absent a serious delinquency, a lender will not foreclose merely for late payments because of the time, expense and risk of loss.  A lender cannot sue for damages or seek any other judicial remedy for late payments without sacrificing its real property security.  Code Civ. Proc., § 726. RJN, Ex. E, pp. 95-96 (remarks of R. Ratcliff, Cal. Bankers Assn. witness).  Late fees, if set at the proper level, however, had proven an effective means of assuring prompt payment.  A 10% of installment late fee kept delinquencies on conventional home loans down at 0.7% of loans outstanding.  By contrast, delinquencies on FHA loans were 18 % and on VA loans 10%.  Those federal agencies limited late fees to 4% and 2% of the installment, respectively.  RJN, Ex. G, pp. 47-49 (remarks of B. de Kruif, Home Sav.).

[13]    Testimony also emphasized the importance of the secondary market which, at the time, supplied between a third and a half the funds lent to California homeowners.  RJN, Ex. E, p. 113 (remarks of R. Ratcliff, Cal. Bankers Assn. witness), p. 130 (prepared remarks of Prof. R. Pratt for Cal. Sav. & Loan League); Ex. F, pp. 14-15 (remarks of D. Pearson, Superintendent, Dept. of Banking).

[14]    *See also* RJN, Ex. D, p. 73 (remarks of D. Jackson, Garrett's attorney), Ex. E., pp. 130-31, 144 (prepared remarks of Prof. R. Pratt for Cal. Sav. & Loan League), pp. 166-69 (prepared remarks of R. Ratcliff, Cal. Bankers Assn. witness); *see also* RJN, Ex. G, p. 35-36 (staff report stating that the committee's 1969 interim study of late fees concluded that in addition to repaying lost interest and administrative expense, late fees should contain a "motivation factor" to encourage prompt payment).

- 19 -

installment during the grace period following its due date.  The statute does *not* address the different situation posited by plaintiffs' complaint—repeated late payments in successive months.  It does *not* require the lender to attribute to the next month's not-yet-due installment a payment received after the current month's grace period but before the next month's due date.  Hence, § 2954.4(b) does not support plaintiffs' legal theory or give them a viable claim and the complaint should be dismissed.

## IV

## NONE OF PLAINTIFF'S FOUR CLAIMS ARE VIABLE

### A.     Plaintiff Has No Viable Breach Of Contract Claim

Plaintiff's first cause of action attempts to allege a breach of contract claim. It fails to do so, alleging neither a contract provision nor a breach.[15]

The complaint attaches plaintiff's note and deed of trust, but points to only one express provision of those agreements—section 7(A) of the promissory note, which grants plaintiff a 15-day grace period in making installment payments before a 5% late fee will be assessed.  Compl., ¶ 19.  The paragraph also states that the late fee will be assessed only once on any late payment.  *Id.*

The complaint does not allege that Saxon charged more than one late fee per late payment or that it charged more than 5%.  Instead, it avers vaguely:

> Because the Note and Deed of Trust were made in California and concern property in California, the prohibition contained in California Civil Code section 2954.4 is incorporated into the Note and Deed of Trust. Defendants breached the terms of the Notes by charging late fees even when Saxon received monthly payments of interest and principal due before the due date or during the grace period.

Compl., ¶ 49.

---

[15]     "A cause of action for breach of contract requires pleading of a contract, plaintiff's performance or excuse for failure to perform, defendant's breach and damage to plaintiff resulting therefrom."  *McKell v. Washington Mut., Inc.*, 142 Cal. App.4th 1457, 1489 (2006).  The relevant terms of the contract must be pleaded as well.  *Id.*

- 20 -

This allegation is mere legal conclusion, not a factual allegation sufficient to sustain a cause of action.  *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1950-51 (2009).  It cannot suffice alone, but only as a marker, directing the Court to other factual allegations of the complaint incorporated by reference into the first cause of action.

In averring late fees were assessed "even when Saxon received monthly payments …" before the due date, paragraph 49 refers to the complaint's main legal theory; namely, that a payment received after the grace period of month #1 but before the due date of month #2 must be attributed to the installment due in month #2.

For the reasons set forth above, § 2954.4(b) does not support plaintiff's legal theory.  Before its due date, month #2's installment is not yet "due" and so that installment cannot be the "most recent installment due"—the installment to which § 2954.4(b) requires the payment to be applied.

Nor do the note and deed of trust support plaintiff's theory apart from § 2954.4(b).  Section 7(A) of the promissory note—the only contract provision mentioned in the complaint—says nothing about payment allocation and so could not be breached by Saxon's application to month #1's installment of a payment received between end of month #1's grace period and the next month's due date.  Moreover, the complaint attaches and incorporates plaintiff's deed of trust, § 2 of which states clearly that "payments shall be applied to each Periodic Payment in the order in which it became due."  Since month #1's installment becomes due before month #2's, a payment received while month #1's installment remains unpaid will always be attributed to that installment first under the deed of trust's clear language.

Finally, the complaint does not factually support the legal conclusion that Saxon charged late fees "even when Saxon received monthly payments … during the grace period."  Compl., ¶ 49.  The only pertinent facts alleged are that plaintiff "made payments on … June 30, 2007, July 31, 2007, August 31, 2007, and

- 21 -

12015/0003/833915.1

September 28, 2007."  Compl., ¶ 27.  But, as paragraph 7(A) of plaintiff's note clearly states, it is not the date payment is made that counts.  Instead, it is the date payment is received that matters.  And, § 1 of the deed of trust goes on to say that for these purposes "received" means "received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15."  The complaint does *not* allege that Saxon assessed a late fee on any installment when it *received*, at the proper location, a full payment during that installment's grace period.

Thus, plaintiff has not alleged that Saxon breached any term of his note or deed of trust—or of § 2954.4(b), even assuming the statute is incorporated into those agreements.  The first cause of action, therefore, should be dismissed.

**B.      Plaintiff Has Not Alleged A UCL Violation**

Plaintiff's second cause of action tries to aver a UCL claim.  It fails, at the outset, because plaintiff has not alleged his standing to bring the claim.  To bring a UCL claim, a plaintiff must allege and prove that he or she lost money or property as a result of the unfair competition he or she attacks.  Cal. Bus. & Prof. Code, § 17204; *see., e.g., Daro v. Superior Court,* 151 Cal. App. 4th 1079, 1098-1100 (2007).  Plaintiff fails to do so.  He alleges that Saxon improperly "imposed" late fees but never avers that he (plaintiff) paid those fees or any other sum other than amounts he admits owing under the note and deed of trust.

Plaintiff's attempt to aver an unlawful business practice, *see* Compl., ¶ 53, fails for the reasons already discussed.  Plaintiff does not allege any violation of § 2954.4(b).  He does not mention any other statute that Saxon purportedly violates.  Failing to state a violation of any predicate statute, plaintiffs fail to establish any unlawful business practice.  *Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC,* 634 F. Supp. 2d 1009, 1022 (N.D. Cal. 2007); *McCann v. Lucky Money, Inc.,* 129 Cal. App. 4th 1382, 1395 (2005); *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1174 (2002).

1    Plaintiff's effort to allege a fraudulent business practice is also plainly

2  deficient for the same reason.  Plaintiff avers only that Saxon's practices are likely

3  to deceive the public "into believing that the late charges were being calculated and

4  assessed properly."  Compl., ¶ 55.  This allegation fails because plaintiff has not

5  shown the believed fact was false.  For the reasons already stated, plaintiff has not

6  shown that Saxon did anything other than calculate and assess late fees properly.

7    Finally, plaintiff has not shown that Saxon's business practices were

8  "unfair."  Recent California authority holds that late fees assessed in accordance

9  with applicable law and the parties' credit agreement are not "unfair."  *Davis*,

10  179 Cal. App. 4th at 593-98; *see also Walker*, 98 Cal. App. 4th at 1175-78

11  (mortgagee's property inspection fees not unfair); *McCann,* 129 Cal. App. 4th at

12  1395 (money transfer agent's spread on currency exchange not unfair); *Kunert v.*

13  *Mission Fin. Servs. Corp.*, 110 Cal. App. 4th 242, 265 (2003) (dealer reserve not

14  unfair).  As shown above, the late fees that Saxon assessed were authorized by

15  plaintiff's note and deed of trust.  There is nothing immoral or unfair about

16  charging plaintiff the agreed fees when his payments were delinquent.

17    As plaintiff has not alleged any unlawful, unfair or fraudulent business prac-

18  tice, he has no viable claim under the UCL and his second cause of action should be

19  dismissed.

20  **C.    Plaintiff Alleges No Unjust Enrichment**

21    Plaintiff's third cause of action is labeled "unjust enrichment."  It avers that

22  Saxon "unlawfully and unfairly assessed excessive late fees" and "concealed the

23  true facts and circumstances" from plaintiff.  Compl., ¶¶ 58, 59.  These, of course,

24  are legal conclusions, not factual allegations sufficient to support any claim.

25  *Ashcroft,* 129 S. Ct. at 1950-51.

26    Furthermore, plaintiff cannot state a viable unjust enrichment claim because

27  the complaint establishes that the parties had express written agreements that

28  defined their rights and duties and permitted the late fees that Saxon assessed.

- 23 -

1  *Paracor Fin. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996)

2  ("[u]nder both California and New York law, unjust enrichment is an action in

3  quasi-contract, which does not lie when an enforceable, binding agreement exists

4  defining the rights of the parties."); *Gerlinger v. Amazon.Com, Inc.,* 311 F. Supp.

5  2d 838, 856 (N.D. Cal. 2004) (same); *Cal. Medical Ass'n, Inc. v. Aetna U.S.*

6  *Healthcare of Cal., Inc*., 94 Cal. App. 4th 151, 172 (2001).

7  **D.       The Court Should Decline To Grant Declaratory Relief**

8          Plaintiff's fourth and final cause of action purports to allege a claim for

9  declaratory relief.

10          This claim fails, first of all, because declaratory judgment is not a theory of

11  recovery, but merely an additional remedy allowed litigants.  The Declaratory

12  Judgment Act is purely procedural in nature.  It does not confer any new

13  substantive right.  *National Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2d Cir.

14  1997); *Commercial Union Ins. Co. v. Walbrook Ins. Co.*, 41 F.3d 764, 775 (1st Cir.

15  1994); *Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983) (citing *Skelly Oil Co. v.*

16  *Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)).  Because plaintiff has not

17  otherwise pleaded any viable claim, he has not established his entitlement to any

18  remedy, including the additional remedy of a declaratory judgment.

19          Moreover, "district courts possess discretion in determining whether and

20  when to entertain [the] action [for a declaratory judgment]… even when the suit

21  otherwise satisfies subject matter jurisdictional prerequisites."  *Wilton v. Seven*

22  *Falls Co.*, 515 U.S. 277, 282 (1995) (citing *Brillhart v. Excess Ins. Co.*, 316 U.S.

23  491, 495 (1942)).

24                    … "There is … nothing automatic or obligatory about the
                     assumption of 'jurisdiction' by a federal court" to hear a
25                    declaratory judgment action.  By the Declaratory
                     Judgment Act, Congress … created an opportunity, rather
26                    than a duty, to grant a new form of relief to qualifying
                     litigants.  Consistent with the nonobligatory nature of the
27                    remedy, a district court is authorized, in the sound
                     exercise of its discretion, to stay or to dismiss an action
28                    seeking a declaratory judgment ….

12015/0003/833915.1

Case No.:

1  *Wilton*, 515 U.S. at 288.

2      Among the factors the Court may consider in exercising its discretion are

3  "whether the declaratory action will settle all aspects of the controversy; whether

4  the declaratory action will serve a useful purpose in clarifying the legal relations at

5  issue; … and the availability and relative convenience of other remedies."

6  *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2004).

7      The Court should exercise its discretion to dismiss plaintiff's "claim" for de-

8  claratory relief.  For the reasons already stated, the only declaration to which plain-

9  tiff is entitled is a declaration stating that his claims are without merit.  A dismissal

10  of his complaint will establish the same conclusion without the trouble, expense

11  and delay attendant on full litigation of a class claim for declaratory relief, complete

12  with burdensome discovery, class certification and notice, and the other normal pre-

13  judgment procedures in litigation of this type.

14                              **V**

15                        **CONCLUSION**

16      For the reasons stated above, the Court should grant this motion and dismiss

17  the complaint.  Furthermore, there is no reason to grant plaintiff leave to amend.

18  No new facts can bolster the defective legal theory that underlies his entire

19  complaint.  Leave to amend need not be granted when amendment would be futile.

20

21  DATED:  August 11, 2010            SEVERSON & WERSON
                                       A Professional Corporation
22

23

24  By:_____*/ s / Regina J. McClendon*_____
                                       Regina J. McClendon

25                                     Attorneys for Defendant
                                       Saxon Mortgage Services, Inc.
26

27

28

- 25 -

Case No.: